# United States Bankruptcy Court
## District of Massachusetts

In re: )
)
NANCY E. PATCHELL, ) Chapter 13
DEBTOR. ) Case No. 02-45551-JBR
)
——————————————— )
)
NANCY E. PATCHELL, )
Plaintiff, )
)
) Adversary Proceeding
v. ) No. 04-04460
)
OPTION ONE MORTGAGE )
CORPORATION *et al.*. )
Defendants. )
——————————————— )

## MEMORANDUM OF DECISION REGARDING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS CONCERNING SEVERAL OF THE PLAINTIFF'S CLAIMS

This matter is before the Court on the Option One Mortgage Corporation and Wells Fargo Bank's (Defendants) Motion For Judgment on the Pleadings Concerning Several of the Plaintiff's Claims [Docket # 75]. In response to the Defendant's Motion, Nancy Patchell (Plaintiff) filed a Motion to Dismiss Defendants' Motion for Judgment on the Pleadings Concerning Several of the Plaintiff's Claims [Docket # 76]. Subsequently she filed two pleadings, each styled a "Supplement": Supplement to the Complaint [Docket # 96] and Supplement to Count Twenty-Six [Docket #97]. In response to the Court's order that she clarify whether she intended the "supplements" to be amendments to the Amended Complaint (for which no approval was sought) or oppositions to the Motion for Judgment on the Pleadings, or some other type of pleading, the Plaintiff simply alleged they were "supplements." The Defendant moved to strike the

1

supplements. At the hearing, when the Plaintiff still could not or would not explain what

type of pleading she intended them to be, the Court ordered that, to the extent the

supplements were intended as further amendments, they were stricken. In an effort to

give this *pro se* Plaintiff every opportunity to present her case, the Court noted that it

would treat the supplements as further responses to the Motion for Judgment on the

Pleadings and review them to see if they contained any plausible defenses to the

Defendants' Motion. This Court held a non-evidentiary hearing on the Motion for

Judgment on the Pleadings and took the matter under advisement.

**BACKGROUND**

This case arises out of the Plaintiff's purchase and subsequent refinancing of two

separately deeded but apparently contiguous parcels of real estate. In March 2001 the

Plaintiff borrowed money ("Loan One") from Defendant Option One Mortgage

Corporation ("Option One"). Loan One was secured by a mortgage on the Debtor's real

estate (the "Property"). On September 27, 2001 the Debtor and Option One entered into

a refinancing ("Loan Two") also secured by the Property. Subsequently Loan Two was

assigned to Defendant Wells Fargo Bank ("Wells Fargo").[1] Wells Fargo also held a note

and mortgage on property owned by a third party which abuts the Plaintiff's and which

she alleges has a structure that encroaches on her Property. Among other things, the

Plaintiff alleges that Option One and Wells Fargo are affiliates and/or that they had at the

relevant times a master-servant relationship. She alleges that their behavior, including

the failure to disclose their relationship, the fact of the encroachment, as well as certain

_____

[1] Although it may be that Wells Fargo might be entitled to judgment on some of the
counts that on their face apply to the lender at the time the loans were made, the
Defendants do not make this distinction in the Motion for Judgment on the Pleadings.

2

other actions in connection with the making, servicing, and attempted collection of the

Loans, such as the charging of certain fees and costs, violate the Truth in Lending

("TILA") statute and regulations, specifically those sections governing the Home

Ownership and Equity Protection Act ("HOPEA") loans, the Racketeer Influenced and

Corrupt Organization Act ("RICO") statute, the Fair Debt Collection Practices Act and

various provisions of Massachusetts law and have caused her emotional distress.

The Defendants seek judgment pursuant to Fed. R. Civ. P. 12(c) on 22 of the 34

counts of the Complaint [Docket # 1], as amended [Docket # 43]. [2] Motions for judgment

on the pleadings pursuant to Rule 12(c) are decided under the same standard as motions

to dismiss pursuant to Fed. R. Civ. P.  12(b)(6). Collier v. City of Chicopee, 158 F.3d

601, 602 (1st Cir. 1998). "To grant judgment on the pleadings, the Court must be certain

that the nonmoving party is not entitled to relief under any set of facts that could be

proved in support of its claim." International Paper Company v. Inhabitants of the Town

of Jay, 736 F. Supp. 359, 362 (D. Mass. 1990), aff'd 928 F.2d 480 (1st Cir. 1991).

Additionally, the United States Supreme Court has held that allegations made in a *pro se*

complaint are held to less stringent standards than pleadings drafted by an attorney.

Haines v. Kerner, 404 U.S. 519, 520 (1972).

The Plaintiff has attached volumes of exhibits numbering hundreds of pages to

her Amended Complaint.  Those exhibits are deemed part of the pleadings for all

purposes.  Fed. R. Bankr. P. 7010 incorporating Fed R. Civ. P. 10(c) ("Statements in a

pleading may be adopted by reference in a different part of the same pleading or in

---

[2] The Complaint contains Counts 1 through 33; the Amended Complaint only adds count
34 and does not repeat Counts 1 through 34.  The Court will use the term "Amended
Complaint" to refer to both pleadings.

another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.")   Thus judgment on the pleadings is still appropriate.  In reviewing the exhibits, the Court notes that it reviewed those documents in some instances even though neither party specifically cited to them in an effort to discern whether there was any support for a claim.

The overarching theme of the Motion for Judgment on the Pleadings is that most of the counts are nonsensical and the Defendants simply do not know how to respond. Some do not even allege a duty owed to the Plaintiff; others do not allege a breach of a duty.  At least one is based on a law for which there is no private right of action.  Most fail to allege a causal connection between the Defendants' alleged behavior and the distress the Plaintiff alleges she has suffered.  The Court is not unsympathetic to the Defendants' frustration.  There is little in the Amended Complaint that resembles "a short and plain statement of the claim...." Fed. R. Civ. P. 8(a).  Trying to find allegations of the elements of each count is akin to finding Waldo in a "Where's Waldo" puzzle.  But the Amended Complaint does cite specific sections of statutes and regulations and the Defendants, in many instances, did little to address the applicability or inapplicability of those cited sections.  Instead the parties put a tremendous burden on the Court to sort through the pleadings and the Court expended a substantial amount of time doing so. Nevertheless, the Court has tried to ferret out support for the claims in the Amended Complaint without becoming an advocate for the Plaintiff.  Her ever-changing allegations and her misunderstanding of substantive law and procedure[3] have made this an

---

[3] For example, the Plaintiff asked the Court to take judicial notice of the fact that Loans One and Two are HOPEA loans even though the Defendants vigorously dispute this allegation.

exceedingly difficult task. Yet the Court has attempted, as it must, to examine the Amended Complaint through a *pro se* plaintiff's prism and has given this *pro se* Plaintiff the benefit of every possible set of facts that can be construed as having been pled in her ramblings. The Defendants, represented by experienced counsel, do not get the same benefit of having their pleadings reviewed to construct arguments they failed to raise. The Court cautions both sides that it will not continue to expend the amount of time and resources that were used to deal with the Motion for Judgment. If additional dispositive motions and oppositions are filed, the Court expects that each side will comply with the rules of procedure and will **clearly and concisely** set forth their positions. The same will be expected at trial.

In the past the Court has urged the Plaintiff to engage counsel to represent her in this matter and on occasion has frankly told the Plaintiff that much of what she files is incomprehensible. Her response is to state her disagreement and tell the Court that such comments are "hurtful." "Hurtful" though they may be, they are not wrong. Indeed in many instances when the Court has asked the Plaintiff to explain what she is requesting in various pleadings, she has been unable to do so. In fact at one point the Plaintiff's husband, who is not an attorney, asked to intervene in this Adversary Proceeding so that he could assist the Plaintiff. His request was denied as it was nothing more than attempt to have the Court approve his unauthorized practice of law. Once again, and for the final time, the Court urges the Plaintiff to assess realistically her ability to make and respond to dispositive motions and carry her burden of proof for any surviving counts at trial as the burden she must bear after this motion becomes increasingly heavier.

ach-patchell-memo.TIF

When judging the Amended Complaint and answer thereto against the Motion for

Judgment on the Pleadings, some of the counts pass the low threshold for surviving a

Rule 12(c) motion; others do not.

Count 1) Failure to Disclose Maximum Monthly Payments

The Plaintiff alleges that Defendants failed to disclose the Maximum Monthly

Payment pursuant to TILA, specifically HOPEA, and Massachusetts regulation

governing "high cost" home loans. Plaintiff cites 12 C.F.R. § 226.32, 12 C.M.R. §

40.04(4) and 209 C.M.R. § 32.30 as creating this duty of disclosure. The Defendants

argue that it is unclear whether this disclosure was required and if so, whether it was

made.  They do not expand upon their argument that the disclosure may not be required

although they do dispute that the loans are covered by HOPEA. Whether the disclosure

was made is a question of fact to be determined at another time.  Instead the Defendants

seek judgment because the Plaintiff failed to allege that she was harmed by the non-

disclosure even if they were required to make it.

A duty to disclose may exist pursuant to federal and state regulations, and there is

the possibility that the Plaintiff might be entitled to statutory damages under 15 U.S.C. §

1640- a point not addressed by the Defendants. Moreover the Plaintiff does allege, albeit

not in the paragraphs under this specific count, that the Defendants' actions caused her

emotional distress.  In looking at the facts in a light most favorable to the Plaintiff, this

count will SURVIVE.

Count  4: Failure to disclose affiliation with Wells Fargo:

6

The Plaintiff alleges that Option One has an affiliation with Wells Fargo because she believes Wells Fargo is an "investor" in Option One. The Plaintiff alleges Option One's failure to disclose the affiliation violates 15 U.S.C § 1638 and 12 C.F.R. § 226.18(a). The Defendants argue that no such affiliation exists.

Taking the Plaintiff's allegations as true (a stretch given that she does not plead that Wells Fargo owns 10% or more of any class of Option One stock), this count fails as there is no duty to disclose an Option One-Wells Fargo affiliation under the statute or regulation upon which the Plaintiff relies. Section 1638(a)(1) creates a duty upon a creditor to disclose "[t]he identity of the creditor required to make disclosure." That apparent tautology is made clear when it is read in connection with section 1602(f) which provides in relevant part:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, *and* (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.... (Emphasis added).

Thus to be a "creditor" required to disclose, among other things, "the identity of the creditor required to make disclosure," a mortgagee must fall under both prongs of section 1602(f). Both Option One and Wells Fargo would appear to easily be within the description set forth in the first prong but only Option One falls within the second. The Plaintiff has not pled that either of the loans were initially payable to Wells Fargo. In fact, she argues that Loan Two was subsequently assigned to Wells Fargo. Moreover, she attached a copy of the mortgage for each loan as exhibits to the complaint. Only Option One's name appears as the person to whom the loans are payable.

7

The Plaintiff fares no better under the regulation she cites as the regulation, 12 C.F.R. § 226.18(a)(1), mirrors the language of the statute.

Finally, although the Court is aware that there are statutes and regulations which require disclosure of certain affiliations in the context of mortgage loans (*e.g.,* 12 U.S.C. § 2602(7); 24 C.F.R. § 3500.15(b)(1) requiring broker disclosure of certain affiliated service providers), the Court is not aware of any which would support the Plaintiff's claim. And, although the Plaintiff is *pro se* and thus has been given a great deal of latitude, it is not the Court's responsibility to research her case and advocate her position.

For all of the above mentioned reasons, this count is hereby STRICKEN.

## Count 7) Criminal Usury

Plaintiff alleges a violation of Massachusetts criminal usury statute, M.G.L. c. 271, § 49 (2004). Defendants argue that there are no civil remedies available to the Plaintiff and for that reason the claim should be dismissed. The Defendants' argument is not persuasive as a usurious loan can be avoided. One possible remedy is that of rescission. Defendants further argue that the loan is clearly not usurious. At this early stage, the pleadings must be viewed through the pro-plaintiff lens. That which the Defendant deems to be obvious is not so obvious that judgment on the pleadings should be granted and thus this count will SURVIVE.

## Count 8) Plaintiff alleges that Defendant used "bait and switch" tactics on their Good Faith Estimate of Settlement Costs.

Plaintiff claims that Defendants intentionally included attorney's fees under the category "title examination fees" in an effort to avoid classification as a HOPEA loan in Loan Two. Defendant claims that this was a clerical error. 15 U.S.C.S. § 1605 (f)(1)(A,B)

8

states that disclosures affected by the finance charge shall be treated as accurate if they do not "vary from the actual finance charge by more than $100.00; or is greater than the amount required to be disclosed under this title." <u>Id</u>. There is some ambiguity as to how much the Good Faith Estimate differs from the Settlement Cost statement for Loan Two. Additionally, the Court is unable at this point to determine definitively whether or not this loan qualifies as a HOPEA loan.

Looking at the pleadings in a light most favorable to the Plaintiff, this count SURVIVES.

Count 10)  <u>Plaintiff Alleges False or Misleading Misrepresentations</u>:

The Plaintiff states that the debt collection letters sent to her lacked a paragraph explaining the nature of the debt collection letter and its purpose as required by 15 U.S.C. § 1692(e).  The Court notes that 15 U.S.C. § 1638 also elaborates on the required disclosures by a creditor. Plaintiff claims that not all necessary disclosures have been made pursuant to this statute. The Defendants claim that the count should be dismissed for failing to allege damages. Neither party has raised the issue of whether statutory damages are appropriate if a violation is found. And again, one of the overarching themes of the Amended Complaint is the emotional distress suffered by the Plaintiff and thus looking at the pleadings in a light most favorable to the Plaintiff therefore, the count SURVIVES.

Count 14) <u>Plaintiff alleges that Defendants failed to provide her with a monthly coupon book</u>:

9

Plaintiff alleges that the Defendants did not provide her with a monthly coupon book. The Defendants do not deny the allegation. The Plaintiff, however, does not reference any regulation or statute that would create a duty to provide said coupon book. Moreover the Plaintiff admits that she was provided with monthly statements serve the same purpose as a coupon book.

For all of the above mentioned reasons, this count is hereby STRICKEN.

Count 15) Plaintiff alleges that the Defendants violated MGL 183 § 63B

Plaintiff alleges that the mortgage for Loan Two was recorded without her receiving the payment that she claims was due to her. Moreover she argues that M.G.L. 183 § 63B[4] requires that she receive the funds before a mortgage is recorded. It does not. As one Massachusetts court noted, the cited statute appears to have been enacted in response to the intolerable problems that arose when it was learned that a now-defunct lender, Abbey Financial Inc., which filed for bankruptcy protection, had failed to fund several mortgage loans.

> On December 27, 1994, perhaps as a result of the problems faced by Abbey borrowers, the Massachusetts Legislature enacted G.L. 183, § 63B, which prohibited the recording of a mortgage *until the loan proceeds had at least been received by the closing attorney*."

---

[4] That statute provides in relevant part:

No mortgagee who makes a loan to be secured by a mortgage or lien on real estate located in the commonwealth... shall deliver said deed or cause the same to be delivered into the possession of such registry of deeds or registry district for the purpose of the recording thereof unless prior to the time said deed is so delivered for recording, said mortgagee has caused the full amount of the proceeds of such loan due to the mortgagor pursuant to the settlement statement relevant thereto given to said mortgagor....

10

ach-patchell-memo.TIF

Horvath v. Adelson, Golden & Loria, P.C., 2000 WL 33159239, *1, n.1 (Mass. Super.)
(emphasis added). The Plaintiff does not allege the closing attorney did not receive good
funds.

To the extent that count 15 seeks to hold the Defendants liable only because
Option One recorded its mortgage before the Plaintiff received the funds she was owed,
the count will be stricken. If the Plaintiff is alleging that the funds she received were less
than the full amount she was owed, as she suggested at oral argument, she should seek
leave to amend this count.

Count 18) Option One failed to disclose Investor/ Master-Servant relationship:

This count is identical to Count Four. For reasons discussed above and because of
its duplicative nature, the count is hereby STRICKEN.

Count 19) Plaintiff alleges that Defendants failed to protect Plaintiff's interest in Property

Plaintiff seems to be alleging that the Defendants knew of an encroachment on
her Property prior to any dealings that she had with them. Plaintiff alleges that by not
notifying her of this encroachment, Defendants violated their duty to protect her best
interests. Plaintiff does not address whether her counsel who represented her at the Loan
One closing was informed of the encroachment.

Plaintiff cites Snowden v. Chase Manhattan Mortgage Corp. 17 Mass. L. Rep. 27
(Mass. Super. Ct. 2003), in support of her claim. This case does not create a bright line
duty of lender to protect the best interest of its potential mortgagor as the Plaintiff
suggests the Defendants owed her prior to her entering into Loan One. Instead Snowden
involved a mortgagee (Chase) who refused to delay a foreclosure despite the fact that the

11

plaintiffs found a home buyer willing to pay far more than was actually owed on the

mortgage and in fact would result in equity for the mortgagor. In discussing what the duty

owed by the mortgagee is the court said,

> (the) Supreme Judicial Court observed that "the law governing a mortgagee's
> responsibility to the mortgagor in the exercise of a power of sale is relatively
> straightforward. The mortgagee 'must act in good faith and must use reasonable
> diligence to protect the interests of the mortgagor.'"

Snowden, 17 Mass. L. Rep. at 7. Plaintiff cites no other basis for her allegation

that the Defendants owed her a duty before she even had a relationship with them. At oral

argument she seemed to suggest there is a conspiracy between Option One (her

mortgagee until her loan was assigned to Wells Fargo) and Wells Fargo (the mortgagee

on the encroaching parcel) by attempting to address their foreclosure frequency in

Worcester County. Even if the foreclosure frequencies were relevant, and they are not,

this is not a class action. It is Plaintiff's harm occasioned by a breach of a duty the

Defendants owe her that is relevant.  Because there is no  duty to act in her best interest,

the count is will be STRICKEN.


Count 20) <u>Plaintiff alleges that the Defendants were unjustly enriched by charging</u>

<u>duplicate fees:</u>

The Plaintiff is alleging that the Defendant, Option One, was unjustly enriched

due to the duplicative nature of its charges in connection with Loan One and Loan Two.

Plaintiff provides a chart in support of her contention. The chart itemizes settlement

charges on two separate loans. Plaintiff offers no explanation of how these facts support

her claim that Defendants charged duplicative fees; the fees are not duplicative on their

face. She suggests no regulation, law, or otherwise which may have been violated by

12

charging fees for each loan transaction. The Plaintiff has not stated a claim for which relief can be granted and therefore this count will be STRICKEN.

Count 21) Plaintiff alleges that the Defendant Wells Fargo knowingly loaned on a defective title.

Plaintiff is alleging, similar to Count 19, that Defendants had a duty to inform her of an alleged boundary encroachment on her parcel of land. She cites no law, regulation, statute or otherwise that would create such a duty. As mentioned earlier, it does not appear that Snowden creates said duty either. Moreover to the extent that the Plaintiff is arguing Wells Fargo should not have made a loan to her neighbor, the Plaintiff lacks standing to make this argument.

For all of the above mentioned reasons, this count will be STRICKEN.

Count 24) Emotional and Physical Harm

Plaintiff has alleged that the Defendants, through their alleged fraudulent and deceptive practices, have caused her physical and emotional harm. Plaintiff has suggested that she has received treatment from a licensed physician. Although the count is vague, it states at least the bare essentials of a claim for emotional distress. Moreover, such rewards have been granted in the past. See Fleet Mortgage Group v. Kaneb, 196 F.3d 265 (1st Cir. 1999), (where the First Circuit upheld an award of $ 25,000.00 for emotional distress to a plaintiff for a willful violation by the defendant of the automatic stay.) At this point the pleadings must be considered in a light most favorable to the Plaintiff.

For the above mentioned reasons, this count will SURVIVE.

Count 25) Defendants violated Regulation Z 226.5(b)(2)(ii)

13

Plaintiff claims that the Defendants violated regulation 12 C.F.R. § 226.5. This

regulation requires that creditor mail or deliver a periodic statement within 14 days prior

to any date or time period required to be disclosed pursuant to 12 C.F.R. § 226.7(j). The

purpose of this regulation is to provide the consumer with an opportunity to avoid any

additional finance charge(s) that may be incurred. Plaintiff claims that the Defendants did

not comply with said regulation. The Defendants argue that the claim is

incomprehensible and therefore too difficult to formulate a defense. Defendants'

argument is not persuasive. Although not expertly written, the Plaintiff has made out a

claim for which relief could potentially be granted. She has cited a regulation, alleged a

violation thereof, and claimed potential damages by stating that if there indeed has been a

violation of this regulation then Defendants are not entitled to certain applicable fees and

charges which they allege to be owed.

Looking at the facts in a light most favorable to Plaintiff, the count SURVIVES.

Count 26) Plaintiff alleges violation of RICO

The Plaintiff alleges that Defendants violated the RICO statute, 18 U.S.C §

1962. The Defendants deny this allegation. To state a civil claim under RICO the

moving party must show (1) conduct (2) of an enterprise (3) through (4) a pattern of

racketeering activity. Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402 (8th

Cir. 1999). At the hearing, the Plaintiff was asked to elaborate on this count but instead

stated that she rested on her pleadings.  A fair reading of the pleadings, however, suggest

that the Plaintiff is attempting to convert the alleged TILA violations into racketeering

activities without pleading the requisite elements of RICO.

14

ach-patchell-memo.TIF

Violations of TILA are not, in and of themselves, predicate acts. <u>Balderos v. City Chevrolet, et al.</u>, 214 F.3d 849, 854 (7th Cir. 2000). Violations of TILA might constitute a predicate act if the violation is within the context of mail or wire fraud. However, such a claim must be separately plead. <u>Id</u>. The Plaintiff has not done so in her pleadings.

It is true that the *pro se* plaintiff's pleadings are to be read more liberally than pleadings drafted by an attorney. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521 (1971). A *pro se* plaintiff must still "comply with the applicable procedural and substantive rules of law." <u>Overton v. Torruella</u>, 183 F. Supp.2d 295, 303 (2001). In this instance <u>Overton</u> is particularly insightful as it dealt with a *pro se* plaintiff who brought a RICO claim. As the court noted a plaintiff must, "allege specific instances of 'racketeering activity' within the meaning of RICO…" as well as "allege facts that even suggest a causal connection between…" the defendants actions and any harm. <u>Id</u>., 306-307. The court concluded that the *pro se* plaintiff had not satisfied his burden and thus dismissed the complaint.

Similarly, it is clear that the current *pro se* Plaintiff has not met the burden necessary to establish a RICO claim. 18 U.S.C. §1962 requires that a party allege that a defendant received income derived from a "pattern of racketeering activity or through collection of an unlawful debt." <u>Id</u>. The Plaintiff devotes over three pages of the Amended Complaint to a hodgepodge of allegations, statements of alleged fact, and unintelligible banter. At no point does she clearly allege two or more predicate acts that fall under the definition of "racketeering activity" pursuant to 18 U.S.C. §1961. Among the clutter of scattered facts, it appears that the Plaintiff is alleging that the predicate acts include the forgery alleged in Count 34, lying, inaccurate billing, alleged violation of credit collection laws, and alleged failure to "provide plaintiff with the payoff amount."

15

Although virtually all debt collection activities in the modern age use the mail or

telephone, this Plaintiff has not pleaded any of these frauds with the required specificity.

Feinstein v. RTC, 942 F.2d 34 (1st Cir. 1991). While Plaintiff's twenty-three page (not

including Exhibits) Supplement to Complaint on Count Twenty-Six [Docket #97] sheds

some light as to what the Plaintiff is alleging as representing the requisite predicate acts,

it is insufficient. The Plaintiff cites the alleged forgery of Attorney Conlin, the charging

of pre-payment penalty, the alleged violation of 18 U.S.C. § 2314, the alleged forgery

described Count Thirty-Four of the Amended Complaint [Docket # 43], and the

Defendant's failure to provide Plaintiff with the HUD booklet as alleged in Count 32 as

predicate acts.

As to the alleged forgery of Attorney Conlin, this clearly is not a predicate act

committed by the Defendants in this case. Nowhere does the Plaintiff allege that Attorney

Conlin is an agent of either Option One or Wells Fargo[5]. It is difficult to conceive of how

the Plaintiff believes that Mr. Conlin's action could create a predicate act necessary to

establish a RICO claim against the Defendants in this matter. Her allegation that Option

One should have investigated the circumstances of the probate of her mother's estate has

no merit and does not represent a predicate act by the Defendants.

---

[5] In fact at oral argument the Plaintiff acknowledged that Attorney Conlin, the Plaintiff's
first cousin, was Plaintiff's counsel prior to Loan One. The Plaintiff claims that Conlin
represented her prior to the first mortgage when her deceased mother's estate was in
probate. She alleges that Mr. Conlin or his agents had forged her signature on documents
relating to the probate of her mother's estate. Mr. Conlin is not and never has been a
party in this adversary proceeding. Although the Court does not rely on the Plaintiff's
statements to make its ruling that she has failed to properly plead this count, the Court
notes this portion of the Plaintiff's argument to show how far the Plaintiff seems to think
a lender's duty extends.

16

Plaintiff suggests in her Supplement to Count 26 that the forgery alleged in Count 34 in her Amended Complaint [Docket #43], namely the forgery of her signature on a letter requesting a payoff figure on Loan One, represents a predicate act. She does not reference which "racketeering activity" of the dozens listed in 18 U.S.C. § 1961 this allegation of forgery represents. She does not link this forgery to the mail or wire or any other instrumentality of interstate commerce. She cites instead 15 U.S.C. § 6821 and FDIC regulations, neither of which is within the definition of racketeering activity pursuant to 18 U.S.C. §1961. A simple allegation of garden variety fraud is not sufficient to meet the burden of alleging two or more predicate acts to establish a RICO claim. See Overton, 183 F. Supp.2d at 306. The definition of racketeering activity under 18 U.S.C. § 1961 is very specific and has not been met as to the allegation of forgery. As such, the forgery alleged by the Plaintiff is not sufficient to represent a requisite predicate act.

The Plaintiff, in her Supplement, suggests that the Defendants' failure to provide her with a HUD booklet in connection with Loan Two as alleged in Count 32 represents a predicate act. Count 32 does not cite any regulation, law or otherwise as creating a duty of the Defendants to provide a HUD settlement booklet nor do the parties address whether the booklet which was apparently furnished as part of the Loan One documents needed to be given again on a refinancing occurring less than a year later. Even if such a duty exists, however, it is not a violation that meets the definition of "racketeering activity" pursuant to 18 U.S.C. §1961 and therefore does not represent a predicate act.

The alleged unlawful charging of a prepayment penalty and violation of 18 U.S.C. §2314 is also cited by the Plaintiff in her supplement as a predicate act necessary to establish a RICO claim. 18 U.S.C. § 2314 is a "racketeering activity" as defined in 18

17

ach-patchell-memo.TIF

U.S.C. § 1961(1)(B). The regulation prohibits the "transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting." Id. It is difficult to understand how the Plaintiff believes that the alleged prepayment penalties fall under this regulation. It does not. However, even viewing the allegation in a light most favorable to the Plaintiff, this claim would only represent one predicate act, where two or more are required to establish a cause of action pursuant to the RICO Act.

The Plaintiff was asked at the June 28, 2005 hearing to state with specificity as to what she believes represent the predicate acts necessary to establish a RICO claim. Instead of clarifying her claim with the Court, Plaintiff decided to rest on her pleadings. Her pleadings, in addition to her Supplement to Count 26, represent 27 pages of conclusory allegations and a collage of scattered statements, the relevancy of which are difficult to discern. Within these 27 pages the Court is unable to pinpoint even two predicate acts that meet the definition of "racketeering activity" pursuant to 18 U.S.C. §1961.

Additionally the Plaintiff has not sufficiently pleaded the element of "enterprise" required for a RICO claim although she argued that an enterprise exists between Option One and Wells Fargo. Plaintiff may not rely on conclusory allegations to establish the existence of an enterprise under RICO Act. See VanderBroeck v. Commonpoint Mortgage Company, 22 F. Supp.2d 677 ( W.D. Mich. 1998). Indeed that is exactly what the Plaintiff has attempted to do in her pleadings. In Vanderbroeck the court found that the borrowers' allegation that an "enterprise" existed between lenders and investors was not sufficient because the plaintiff failed to demonstrate that "...some sort of structure exists between the group for the making of decisions, whether it be hierarchical or

18

consensual." Id. at 681. Similarly, the Plaintiff in this proceeding has failed to show even a trace of evidence suggesting that either Wells Fargo or Option One has formed a joint decision making structure. Allegations of Wells Fargo's investment in Option One, Option One's assignment of Loan Two to Wells Fargo and Wells Fargo have given a mortgage on real estate abutting the Plaintiff's properties do not support the Plaintiff's claim that the Defendants represent an "enterprise" under the meaning of RICO.

As such, Plaintiff has failed to state a claim for which relief can be granted and the count will be STRICKEN.

Count 27) <u>Plaintiff Alleges Defendants Required, By Contract, Waiver of Dower And Curtsey:</u>

Plaintiff alleges that the Defendants unlawfully included a Wavier of Dower and Curtsey within the mortgage contract and that in doing so, they partook in an unconscionable and deceptive act under M.G.L. 189, § 4. This statute does not suggest that waiver is unconscionable. In fact it appears that any argument that said waiver is unconscionable is moot as the language of the statute suggests that encumbrances, which would include a mortgage, take priority over dower. M.G.L. c. 189 § 1. Additionally, Plaintiff's claim that waiver of curtsey is unconscionable is without merit as the statute states that , "curtsey and, except as prescribed herein, dower are abolished." Id. Finally, any right to dower that remains, as prescribed in the statute, only arises upon death of a spouse. Id. In this case there has been no death and thus no damages, breaches and no real explanation as to why such a waiver is unconscionable.

For all of the above mentioned reasons, this count is hereby STRICKEN.

19

Count 28) Defendants Required as a Condition of Mortgage Waiver of Homestead:

As in Count Twenty-Seven, even if the facts are taken in a light most favorable to the Plaintiff the Plaintiff has still failed to show a legal or contractual violation concerning the waiver of homestead. The waiver of homestead is not only not unconscionable, the homestead statute itself provides for the possibility of a voluntary waiver. M.G.L. c. 188 § 7.

For all of the above mentioned reasons, this count is hereby STRICKEN.

Count 29) This count is a clutter of facts that does not cite any violation of statute, regulation or otherwise. Because this claim is so vague and incomprehensible, it would be unfair to require the Defendants to defend against it as such.

For all of the above mentioned reasons, this count is hereby STRICKEN.

Count 30) Plaintiff alleges that Defendants failed to provide a Mortgage Inspection Survey.

Plaintiff alleges that Defendants did not provide her with a Mortgage Inspection Survey, which she alleges was taken by the Defendants. Defendants deny that such survey was taken. In the Plaintiff's Complaint, Plaintiff does not allege that she requested a Mortgage Inspection Survey. Most significantly, she does not suggest that there was a duty for Defendants to provide such a plan on their own accord.

For all of the above mentioned reasons, this count is hereby STRICKEN.

Count 31) Defendant's Appraisal never included the Worcester Land

In this count the Plaintiff, in a conclusory fashion, alleges that the Defendant's appraisal never included the "Worcester Land." The count alleges no facts. Additionally,

20

the Court is not able to discern who commissioned the appraisals cited in Exhibit 39 and

Exhibit 40. Even in looking at this count through the pro-plaintiff lens, the Court can not

manufacture facts and arguments to fill in the gaps perforating this count. The Plaintiff

has failed to state a claim for which relief can be granted. As to the Plaintiffs suggestion

that these actions are further evidence of a pattern of predatory lending practices

throughout the Worcester County area, this Court reiterates that this is not a class action

suit.

 For all of the above mentioned reasons, this count is hereby STRICKEN.


Count 32) Defendants failed to provide Plaintiff with a HUD booklet

 Plaintiff, in a single sentence count, alleges that Defendants failed to provide her

with a copy of the HUD booklet " Settlement Costs, A HUD Guide." She cites Exhibit

forty-two of her complaint as evidencing said failure. The evidence amounts to no more

than a Loan Two Document Disclosure List dated 9/13/01, upon which there is a line that

reads "Settlement Costs, a HUD Guide" and a empty box indicating that one was not

provided. Defendants are correct in stating that there is no suggestion in the Plaintiff's

Complaint that the Defendants had a duty to provide said HUD booklet, nor is there a

suggestion that she asked for said HUD booklet. Nevertheless M.G.L. 184 § 17D (c) does

state that

> "**Unless previously provided** to a prospective mortgage borrower in accordance
> with paragraph (b), a first mortgage lender shall provide the following
> information to a prospective mortgage borrower at the same time such lender **first**
> provides a first mortgage loan application form to any such borrower." (emphasis
> added)

Id. Included in the list of disclosures is the book entitled " Settlement Costs." The

Defendants do not address whether there is a duty to provide the HUD booklet on the

ach-patchell-memo.TIF

refinance of 9/13/01 if said booklet had previously been provided for Loan One in March, 2001. It is not up to the Court to speculate as to whether the Defendants have an absolute defense as they have not articulated one.

For all of the above mentioned reasons, the count hereby SURVIVES.

## Count 33) Defendants sent Incorrect Billing Statements Dated March 18, 2002

Plaintiff alleges that the Defendants sent an incorrect billing statement to her that was dated March 18, 2002, and failed to provide her with an accounting of the loan as she requested. She refers to specific facts she had included in a demand letter pursuant to Chapter 93A.

The allegations are sufficient at this point in the case to state a claim under M.G.L. c. 93A and thus the count SURVIVES.

## Count 34) Plaintiff alleges Defendant forgery.

Plaintiff has alleged forgery by an agent of the Defendant and seeks damages under the Gramm- Leach- Bliley Act. The act does not provide for private right of action. See Menton v. Experian Corp., 2003 U.S. Dist. LEXIS 12457 (S.D.N.Y. July 17, 2003). As such, she has not successfully stated a claim for which relief can be granted.

For all of the above mentioned reasons, the count is hereby STRICKEN.

A separate order will issue.

Dated: July 08, 2005

Joel B. Rosenthal
United States Bankruptcy Judge

22